UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-23420-CIV-UNGARO
(17-20877-CR-UNGARO)

ROBERT DEXTER WEIR,
DAVID RODERICK WILLIAMS, and
LUTHER FIAN PATTERSON,

      Petitioners,

vs.

UNITED STATES OF AMERICA,

      Respondent.
_____ /

**GOVERNMENT'S ANSWER AND MEMORANDUM OF LAW IN OPPOSITION
TO PETITIONERS' PETITION FOR WRITS OF ERROR CORAM NOBIS**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds to the petition for the issuance of writs of error coram nobis filed by Robert Dexter Weir, David Roderick Williams, and Luther Fian Patterson ("Petitioners") (CVDE 1).[1] Petitioners pled guilty to a single-count information charging them with violating 18 U.S.C. § 2237(a)(2)(B) by providing materially false information to a Federal law enforcement officer during a boarding of a vessel subject to the jurisdiction of the United States regarding the vessel's destination (CRDE 43, 93). Petitioners argue that the Court should vacate their convictions because Section 2237(a)(2)(B) is an unconstitutional exercise of extraterritorial jurisdiction under the High Seas Clause of the Constitution. They also argue that their convictions violated the Due Process Clause of the Fifth Amendment because they did not have adequate notice that their

---

[1] Documents filed in this case will be referred to as CVDE followed by the appropriate docket entry number. Documents filed in Petitioners' criminal proceeding will be referred to as CRDE followed by the appropriate docket entry number.

conduct would place them in criminal jeopardy under United States law. As Petitioners have failed to establish a sound reason for not raising their claims earlier, the petition should be dismissed as untimely. Alternatively, as Petitioners have failed to establish any ongoing significant collateral consequence from their convictions that would be eliminated by the granting of the petition, and as the claims in that petition are meritless, the petition should be denied.

## I. STATEMENT OF THE CASE

On September 14, 2017, United States Coast Guard Cutter (USCGC) *Confidence* spotted the wake of a vessel, later identified as the *Jossette* WH 478, speeding towards Haiti from the direction of Jamaica (CRDE 1, 59 and 63). USCGC *Confidence* dispatched an over the horizon (OTH) small boat to intercept, identify, and investigate the *Jossette* (CRDE 1). The OTH approached the *Jossette* and attempted to get it to stop, but the *Jossette* was not compliant and began to flee at a high rate of speed (*id.*). While in pursuit of the *Jossette*, Coast Guard personnel observed the crew of the vessel jettison approximately 20-25 bales of suspected contraband that had been on deck (*id.*). Ultimately, the *Jossette* stopped in international waters approximately 13 nautical miles off the coast of the Navassa Island, and the OTH was able to pull alongside the vessel (*id.*).

When the OTH pulled alongside the *Jossette*, United States Coast Guard (USCG) personnel observed five crewmembers, including Petitioners (*id.*). As part of the boarding process, USCG personnel asked a series of questions of the members of the crew (CRDE 59 and 63). One individual claimed that the vessel was Jamaican and that the vessel was registered in Jamaica (*id*). Jamaica was contacted (*id*). Jamaica confirmed the registration of the vessel but authorized the United States to board and search the vessel (*id*). Jamaica later waived jurisdiction over the vessel. Therefore, the vessel was subject to the jurisdiction of the United States (*id*).

When asked about the destination of the vessel, each of the members of the crew, including Petitioners, told the USCG boarding officers that the vessel's destination was the waters near the coast of Jamaica, where they intended to fish (*id*). This was not true (*id*). As the crewmembers, including Petitioners, then and there well knew, the vessel's true destination was Haiti (*id*). The crewmembers were transferred to the OTH for their safety and were then transferred to the USCGC *Confidence* (CRDE 1). On October 16, 2017, Petitioners and their crewmates were brought from outside the United States to the Federal Detention Center in Miami, Florida (*id*).[2]

Petitioners and their co-defendants were originally charged by way of a criminal complaint with conspiring to possess with the intent to distribute 100 kilograms or more of marijuana, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506 (*id*). Petitioners later waived indictment (CRDE 44, 48, and 50), and on December 13, 2017, they were charged, along with their two co-defendants, by way of an information with knowingly providing a materially false statement to a Federal law enforcement officer during a boarding while on a vessel subject to the jurisdiction of the United States, in violation of 18 U.S.C. § 2237(a)(2)(B) (CRDE 43). On January 3, 2018, pursuant to written plea agreements (CRDE 58 and 62) and factual proffers (CRDE 59 and 63), Petitioners Weir and Williams pled guilty to the information (CRDE 93). That same day, in accordance with the joint recommendations of the parties (CRDE 58 ¶ 7 and 62 ¶ 7), the Court sentenced Petitioners Weir and Williams each to a term of 10 months of imprisonment, to be followed by a term of one year of supervised release (CRDE 93:25, 31). Although the docket in the criminal case does not indicate a minute entry or transcript for the change of plea and sentencing of Petitioner Patterson,

---

[2] In the coram nobis petition, Petitioners make various allegations, without citation, regarding the conditions of their confinement between September 14, 2017 and October 16, 2017 that are not supported by any record evidence.

it appears from his plea agreement (CRDE 66) and judgment (CRDE 67) that both of those events occurred on January 5, 2018. The Court also sentenced Petitioner Patterson to a term of 10 months of imprisonment, to be followed by a term of one year of supervised release (CRDE 67). All of the judgments were docketed by the clerk of court on January 10, 2018 (CRDE 67, 68, 70). Petitioners did not appeal, and their judgments became final 14 days later on January 24, 2018. The deadline for timely filing a motion to vacate under 18 U.S.C. § 2255(f)(1) was January 24, 2019. None of the Petitioners filed a Section 2255 motion.

On August 15, 2019, Petitioners filed the present motion (CVDE 1).

## II.   ARGUMENT

**A.   Petitioners' Claims are Untimely.**

A federal court may issue a writ of error coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). "A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody . . .." *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002). "[C]oram nobis relief is available after [the] sentence has been served because 'the results of the conviction may persist[,] [s]ubsequent convictions may carry heavier penalties, [or] civil rights may be affected.'" *Id.* (quoting *United States v. Morgan*, 346 U.S. 502, 512–13 (1954)). However, a writ of error coram nobis is "an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *Mills*, 221 F.3d at 1203. Indeed, the Supreme Court has stated that "'it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate.'" *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (quoting *United States v. Smith*, 331 U.S. 469, 475 n.4 (1947)); *see also Lowery v. United States*, 956 F.2d 227, 229 (11th Cir. 1992) (same).

"The bar for coram nobis relief is high." *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). The writ is appropriate "'only when the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid.'" *Id.* (quoting *Moody v. United States*, 874 F.2d 1575, 1576-77 (11th Cir. 1989)). Furthermore, "courts may consider coram nobis petitions only where no other remedy is available and the petitioner presents sound reasons for failing to seek relief earlier." *Mills*, 221 F.3d at 1204 (citing *Morgan*, 346 U.S. at 521) (emphasis added); *see also Ghelichkhani v. United States*, 740 Fed.Appx. 978, 979 (11th Cir. 2018) ("the petitioner must present 'sound reasons for failing to seek relief earlier.'") (quoting *Mills*, 221 F.3d at 1204) (emphasis added); *Jackson v. United States*, 375 Fed.Appx. 958, 959 (11th Cir. 2010) ("a district court may consider *coram nobis* petitions only where the petitioner presents sound reasons for failing to seek relief earlier") (emphasis added); *United States v. Pearl*, 288 Fed.Appx. 651, 653 (11th Cir. 2008) (same); *United States v. Bejacmar*, 217 Fed.Appx. 919, 920 (11th Cir. 2007) (same).

While a coram nobis petition is not subject to the one-year statute of limitations applicable to collateral attacks brought under 28 U.S.C. § 2255, a coram nobis petitioner should be held to a more exacting standard than a Section 2255 movant. *See United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012) ("The further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment. Thus, direct review is more defendant-friendly than post-judgment review, and an initial habeas petition is easier for a criminal defendant to litigate than a successive one. The writ of error coram nobis lies at the far end of this continuum.") (internal citations omitted); *United States v. Stoneman*, 870 F.2d 102, 106 (3rd Cir. 1989) ("*Coram nobis* is an extraordinary remedy, and a court's jurisdiction to grant relief is of limited scope. The interest in finality of judgments dictates that the standard for a successful

collateral attack on a conviction be more stringent than the standard applicable on a direct appeal. It is even more stringent than that on a petitioner seeking *habeas corpus* relief under § 2255."). Thus, coram nobis should not be used as a vehicle to circumvent the Section 2255 statute of limitations.[3]

If the Supreme Court had declared Petitioners' statute of conviction unconstitutional after they had completed their sentences, and they then timely pursued coram nobis relief based upon that decision, then they might be able to establish sound reasons for not seeking relief earlier. *See e.g., Peter*, 310 F.3d at 711 (granting coram nobis relief when petitioner argued that the district court lacked jurisdiction over his charged offense in light of *Cleveland v. United States*, 531 U.S. 12 (2000); a case decided 6 months after petitioner completed his term of supervised release and "roughly" a year before the filing of the coram nobis petition);[4] *see also United States v. Walgren*, 885 F.2d 1417, 1421 (9th Cir. 1989) (valid reasons existed for petitioner not raising his actual innocence claim earlier when it was based on a retroactively applicable Supreme Court case issued 5 years after his conviction became final). However, that is not the case here. Petitioners do

---

[3] That Petitioners are attempting to circumvent the time restrictions of Section 2255 is evidenced by the Section 2255 proceeding initiated by co-defendant Patrick Ferguson (CRDE 94). Ferguson, represented by the same attorneys, raised substantively similar challenges to his conviction as part of his Section 2255 motion. When the government pointed out that Ferguson's motion was not timely filed, he countered that if the Court agrees that his Section 2255 motion is untimely, then it should simply convert the motion into a petition for the issuance of a writ of error coram nobis. Doing so would circumvent the statute of limitations set forth in Section 2255(f)(1), as would allowing these Petitioners to seek coram nobis relief when they failed to timely seek habeas corpus relief and there was nothing preventing them from doing so.

[4] Unlike in *Peter*, the government is not here arguing that Petitioners procedurally defaulted their claims of actual innocence by not raising them on direct appeal or in a Section 2255 motion. Instead, the government is raising the distinct argument that the petition is untimely because Petitioners have not satisfied their burden of demonstrating sound reasons for not asserting their claims earlier.

not cite to any prior case, let alone one from the Supreme Court, holding that their statute of conviction is unconstitutional. Instead, they argue that this Court should be the first in the nation to declare that statute unconstitutional. This is an argument they could have raised at any time after their arraignments. Instead, Petitioners specifically negotiated guilty pleas to the statute they now assert is unconstitutional and agreed to recommend sentences of ten months of imprisonment, even though their advisory guideline ranges were zero to six months of imprisonment (CRDE 93:25), in order to avoid potentially longer sentences if convicted of narcotics offenses.[5] They then waited until over 20 months after their arraignments, over 18 months after their judgments became final, over a year after their releases from prison, and over 6 months after the deadline for filing a timely Section 2255 motion expired before seeking coram nobis relief.

Petitioners make no attempt to demonstrate "sound reasons" for failing to raise their constitutional challenges to their convictions earlier. Indeed, Petitioners fail to provide any reason whatsoever why they failed to pursue relief earlier.[6] Accordingly, the Court should dismiss their motion as untimely. *See, e.g., United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007) (upholding the denial of a coram nobis petition asserting that the statute of conviction was unconstitutionally vague as untimely when "[t]he relevant law . . . remained the same throughout

---

[5] Petitioners determined that these plea bargains were in their best interests even in light of the government's statements regarding the difficulties it would face in obtaining convictions on narcotics charges (CRDE 93:22-24).

[6] "[M]ere ignorance of the law is insufficient to excuse" a petitioner's delay in seeking *coram nobis* relief. *States v. Dean*, 749 Fed.Appx. 873, 875 (11th Cir. 2018). In any event, Petitioners were all represented by counsel when they voluntarily pled guilty to a statute they now assert is unconstitutional.

[the] litigation" and "nothing prevented [petitioner] from asserting her claims earlier," either on direct appeal or in a Section 2255 motion).[7]

**B.  Petitioners Have Failed to Prove that Their Convictions are Causing Them a Present Harm that is More than Incidental.**

"One of the requirements for coram nobis relief is that the petitioner show that the challenged conviction is 'causing a present harm' that is 'more than incidental.'" *United States v. Smith*, 644 Fed.Appx. 927 (11th Cir. 2016) (quoting *United States v. Sloan,* 505 F.3d 685, 697 (7th Cir.2007)); *see also Cline v. United States*, 453 F.2d 873, 874 (5th Cir. 1972) (affirming the district court's denial of a coram nobis petition where the petitioner was not "able to show some present or prospective adverse effect from an unconstitutional conviction");[8] *United States v. Smith*, 757 Fed.Appx. 838 (11th Cir. 2018) (declining to address coram nobis petitioner's claim that his statute of conviction was unconstutional in light of his failure to establish an ongoing harm from his conviction); *George*, 676 F.3d at 254 (stating, "[i]n this circuit, . . . a coram nobis petitioner must . . . show that he continues to suffer significant collateral consequences from the judgment" and collecting cases "indicat[ing] that something more than the stain of conviction is needed to show" such consequences); *Howard v. United States*, 962 F.2d 651, 653 (7th Cir. 1992)

---

[7] The court in *Riedl* also held that the fact that petitioner had been deported did not constitute sound reasons for failing to seek relief earlier, as the "deportation argument 'does not explain why she did not challenge her conviction *prior* to her deportation,' either during the nine months between her release from prison and her deportation, or while she was still imprisoned. Additionally, even taking into account the difficulty of litigating in the United States while residing abroad, Riedl has not accounted for the further 20-month delay between her deportation and the filing of her coram nobis petition."  496 F.3d at 1007 (quoting district court ruling)(emphasis in original).  In this case, Petitioners filed the coram nobis petition nearly one year after they were returned to Jamaica.

[8] The Eleventh Circuit Court of Appeals has adopted as binding precedent Fifth Circuit decisions handed down as of September 30, 1981.  See *Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

8

("[T]he petitioner must show that he or she is under a substantial legal disability in order to obtain a writ of error coram nobis."). "[I]t is not enough to raise purely speculative harms or harms that occurred completely in the past." *United States v. Craig*, 907 F.2d 653, 658 (7th Cir.), *amended by* 919 F.2d 57 (7th Cir. 1990).

Petitioners do not argue that they are suffering significant collateral consequences from their convictions that the granting of coram nobis writs would eliminate. The Petitioners were arrested on the high seas, "had no connection to the United States whatsoever" (CVDE 1:21), and were returned to their home country of Jamaica after completing their terms of imprisonment. While the petition contains a bald assertion that the Petitioners are "each subject to a ten-year ban on reentry that will not expire until 2028" (CVDE 1:8), no Petitioner argues that such a ban constitutes a significant collateral consequence. Indeed, no Petitioner asserts, let alone establishes, that he would be able to legally travel to the United States in the absence of any such ban, and it is unclear how a Petitioner could establish that the ban is a significant consequence that would be eliminated by the granting of a coram nobis writ in the absence of such a showing. In any event, it is the Petitioners' burden to prove the existence of significant collateral consequences, and their failure to satisfy that burden is fatal to their petition.

**C.    Section 2237(a)(2)(B) is Constitutional, and Petitioners' Convictions for Violating that Statute are Valid.**

Assuming *arguendo* that Petitioners could both show "sound reasons" for not bringing their claims earlier and prove that they continue to suffer significant collateral consequences from their convictions, their petition would fail on the merits, as their constitutional challenges to 18 U.S.C. § 2237(a)(2)(B) are without merit. Section 2237(a)(2)(B) provides that "[i]t shall be unlawful for any person on board a vessel of the United States, or a vessel subject to the jurisdiction of the United States, to . . . provide materially false information to a Federal law enforcement officer

during a boarding of a vessel regarding the vessel's destination, origin, ownership, registration, nationality, cargo, or crew." Section 2237(e)(3) provides that "the term 'vessel subject to the jurisdiction of the United States' has the meaning given the term in section 70502 of title 46." Section 70502, the definition section of the Maritime Drug Law Enforcement Act ("MDLEA"), defines "vessel subject to the jurisdiction of the United States" to include "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States." 18 U.S.C. § 70502(c)(1)(C). Section 2237(a)(2)(B) criminalizes conduct, such as that of Petitioners, that obstructs the USCG's ability to enforce the MDLEA and incorporates its assertion of extra-territorial jurisdiction.

Congress's authority to enact Section 2237(a)(2)(B) is derived from, among other sources, the Define and Punish Clause of the Constitution, which "empowers Congress '[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations.' U.S. Const. Art. I, § 8, cl. 10. The Supreme Court has interpreted that Clause to contain three distinct grants of power: to define and punish piracies, to define and punish felonies committed on the high seas, and to define and punish offenses against the law of nations." *United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014). In this case, it is the second grant of power, the Felonies Clause, that is at issue. Petitioners raise two claims as to why Section 2237(a)(2)(B) is not a valid exercise of Congressional authority under the Felonies Clause: (1) the United States' exercise of extraterritorial jurisdiction under the Felonies Clause must be supported by a principle of extraterritorial jurisdiction recognized by customary international law and (2) Congress's authority to define and punish felonies on the high seas is limited to instances where the conduct being punished has a nexus to the United States (CVDE 1:10). Petitioners' first claim

fails because this exercise of extraterritorial jurisdiction is supported by principles of international law.  Their second claim is foreclosed by binding Eleventh Circuit precedent.

  1.  *Section 2237(a)(2)(B) comports with principles of international law.*

While the Felonies Clause empowers Congress to define and punish felonies committed on the high seas outside of the jurisdiction of the United States, "international law generally prohibits any country from asserting jurisdiction over foreign vessels on the high seas . . . subject to recognized exceptions"  *United States v. Marino-Garcia*, 679 F.2d 1373, 1380 (11th Cir. 1982).  The recognized exceptions focused on by Petitioners are: (1) the protective principle of jurisdiction, (2) the objective principle of jurisdiction, and (3) universal jurisdiction (CVDE 1:11-15).  Petitioners fail to address, however, that here the United States exercised jurisdiction over the vessel and its occupants with the consent of the flag nation, an action most directly justified under the territorial principle of jurisdiction

  "It is clear, under international law's 'territorial principle,' that a 'state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state.'" *United States v. Robinson*, 843 F.2d 1, 4 (1st Cir. 1988) (quoting *Restatement (Second) of Foreign Relations Law of the United States* § 25 (1965)).  *See also*, *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1379 n.6 (11th Cir. 2011) ("Under the territorial principle, a 'state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state.'") (quoting *United States v. Cardales*, 168 F.3d 548, 553 (1st Cir. 1999)); *United States v. Suerte*, 291 F.3d 366, 370-71 (5th Cir. 2002).  Such an international agreement does not require a treaty but rather can be reached "through informal, as well as formal, means."  *Robinson*, 843 F.2d at 4 (citing *Restatement (Second)* § 115 & comment a).  The definition of a "vessel subject to the jurisdiction

of the United States" as "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States" in Section 70502(c)(1)(C) of the MDLEA "codifies the . . . generally accepted principle of international law: a flag nation may consent to another's jurisdiction."  *Suerte*, 291 F.3d at 375-76 (citing *Restatement (Third) of Foreign Relations Law of the United States* § 522 reporters note 8 and Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3–12 n.41 (3d ed.2001)).

Here, Petitioners stipulated that (1) the *Jossette* was a Jamaican-registered vessel, (2) that Jamaica authorized the United States to board and search the vessel, (3) that Jamaica waived jurisdiction over the vessel, and (4) that the vessel was subject to the jurisdiction of the United States (CRDE 59, 63).[9]  This MDLEA enforcement process was conducted under the bilateral Agreement Between the Government of the United States of America and the Government of Jamaica Concerning Cooperation in Suppressing Illicit Maritime Drug Trafficking ("the Jamaica Bilateral Agreement"), State Dept. No. 98-57, 1998 WL 190434.  *See* Exhibit A.  Jamaica has actively joined with the United States to "cooperate in combatting illicit maritime drug traffic to the fullest extent possible." Jamaica Bilateral Agreement, art. 1, 1998. *See United States v. Gonzalez*, 776 F.2d 931, 939 (11th Cir. 1985) ("Apparently, foreign nations such as Honduras recognize the reasonableness of current United States enforcement efforts, for consent has been given.").  Accordingly, this was a valid exercise of United States jurisdiction under the territorial principle.  *See Cardales*, 168 F.3d at 553 ("In this case, the Venezuelan government authorized the United States to apply United States law to the persons on board the CORSICA.  Therefore,

---

[9] Petitioners do not argue that the record in this case was insufficient to establish that the *Jossette* was subject to the jurisdiction of the United States under Section 2237(e)(3).

jurisdiction in this case is consistent with the territorial principle of international law."); *see also Robinson*, 843 F.2d at 4; *Suerte*, 291 F.3d at 375-76.

*United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), a case cited to in co-defendant Ferguson's response to the government's opposition to his Section 2255 motion, is not to the contrary. *Bellaizac-Hurtado* explicitly did not involve Congress's exercise of authority under the Felonies Clause. *Id*. at 1248-49 ("The Supreme Court has interpreted [the Define and Punish] Clause to contain three distinct grants of power: the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations. The first two grants of power are not implicated here: piracy is, by definition, robbery on the high seas, and the Felonies Clause is textually limited to conduct on the high seas.") (internal citations omitted). Instead, *Bellaizac-Hurtado* only involved "[t]he question [of] whether Congress has the power under the Offences Clause to proscribe drug trafficking in the territorial waters of another nation." *Id*. at 1249. By the very text of the Offences Clause, "[t]he power to 'define' offenses against the law of nations does not grant Congress the authority to punish conduct that is not a violation of the law of nations." *Id*. Accordingly, "[b]ecause drug trafficking is not a violation of customary international law . . . Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama." *Id*. at 1258. The Felonies Clause, in contrast, is not limited to "offenses against the laws of nations." Indeed, the *Bellaizac-Hurtado* court noted that "Congress possesses additional constitutional authority to restrict conduct on the high seas, including the Piracies Clause; the Felonies Clause; and the admiralty power. And we have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause." *Id*. at 1257 (internal citations omitted).

Further, Section 2237(a)(2)(B) is also supported by both the universal principle and the protective principle of jurisdiction. According to the universal principle, Congress may criminalize conduct, such as drug trafficking on the high seas, that is condemned universally by law-abiding nations. *See United States v. Saac*, 632 F.3d 1203, 1210 (11th Cir. 2011); *see also United States v. Estupinan*, 453 F.3d 1336, 1338-39 (11th Cir. 2006) (refusing to "embellish" MDLEA with nexus requirement on the basis of the universal principle).[10] According to the protective principle, a nation may assert jurisdiction over a person whose conduct outside that nation's territory threatens the nation's security. *See Saac*, 632 F.3d at 1211; *see also Campbell*, 743 F.3d at 810 ("We also have recognized that the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach."); *United States v. Rendon*, 354 F.3d 1320, 1324-25 (11th Cir. 2003) (upholding extraterritoriality of MDLEA and rejecting nexus requirement on basis of protective principle); *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002) (same).

In the MDLEA, Congress outlawed certain narcotics offenses on the high seas. In enacting the MDLEA, Congress expressly found "that . . . trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501. Accordingly, the Eleventh Circuit has held that the MDLEA, by which Congress outlawed certain

---

[10] Petitioners confuse the related, but distinct, doctrine of universal jurisdiction with the universal principle of jurisdiction recognized in *Saac* and *Estupinan*. Universal jurisdiction is the power "to define and prescribe punishment for certain offenses recognized by the community of nations as of universal concern, such as piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism, *even where none of the bases of jurisdiction indicated in § 402 is present.*" Restatement (Third) of Foreign Relations § 404 (1987) (emphasis added). It allows a nation to assert jurisdiction anywhere in the world, even within a foreign nation's territory without that nation's consent. That doctrine is not at issue in this case.

narcotics offenses on the high seas, was a constitutional exercise of authority under both the universal principle and the protective principle.  *See Estupinan*, 453 F.3d at 1339; *Campbell*, 743 F.3d at 810.

The Eleventh Circuit has also found that the universal principle and the protective principle not only justify the criminalization of high seas narcotics trafficking itself but also the criminalization of the means of effecting and concealing that trafficking.  The Drug Trafficking Vessel Interdiction Act of 2008 ("DTVIA") provides that

> [w]hoever knowingly operates, or attempts or conspires to operate, by any means, or embarks in any submersible vessel or semi-submersible vessel that is without nationality and that is navigating or has navigated into, through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country, with the intent to evade detection, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2285(a).  In adopting the DTVIA, Congress found and declared

> that operating or embarking in a submersible vessel or semi-submersible vessel without nationality and on an international voyage is a serious international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States.

Drug Trafficking Vessel Interdiction Act of 2008, Pub.L. No. 110–407, § 101, 122 Stat. 4296, 4296 (2008).  "Congress's findings show that the DTVIA targets criminal conduct that facilitates drug trafficking, which is 'condemned universally by law-abiding nations.'" *Saac*, 632 F.3d at 1211 (quoting *Estupinan,* 453 F.3d at 1339).  As a result, the Eleventh Circuit held that the DTVIA was also justified by both the universal principle and the protective principle.  *Saac*, 632 F.3d at 1210-11.

Similarly, the fact that Section 2237(e)(3) cross-references the MDLEA demonstrates that the statute was targeting, at least in part, conduct that facilitates universally condemned drug trafficking crimes.  Indeed, Petitioners acknowledges that the Coast Guard stopped and boarded

the *Jossette* as part of an investigation into suspected narcotics trafficking activities (CVDE 1:6-7). Accordingly, Section 2237 is also justified by both the universal principle and the protective principle. The fact that the narcotics offenses originally charged in the criminal complaint were dropped as part of Petitioners' negotiated plea to a Section 2237 offense is of no moment. The question here is whether or not Congress's passage of Section 2237, like its passage of the DTVIA, was a valid exercise of its authority to target criminal conduct that facilitates drug trafficking. The DTVIA does not require a showing that the outlawed vessel was actually being used in furtherance of a drug trafficking crime in order to be a valid exercise of Congressional authority. *See Ibarguen-Mosquera*, 634 F.3d at 1381 ("Even if Appellants proved that they were not trafficking drugs, they would still be guilty of violating the DTVIA if the government proved, beyond a reasonable doubt, all of the elements of the crime."). The same is true of Section 2237, which does not require a showing that the false statement was actually given in furtherance of a drug trafficking crime.

       2.     *The High Seas Clause does not incorporate a nexus requirement.*

Petitioners argue that the High Seas Clause only permits Congress to outlaw conduct on the high seas if that conduct has some nexus to the United States. That argument is foreclosed by binding Eleventh Circuit precedent. *See Saac*, 632 F.3d at 1211 ("We declined to embellish one statute passed under the High Seas Clause with a nexus requirement. We now decline defendants' invitation to rewrite the Constitution to create one."). Indeed, Petitioners acknowledge that they are advancing this argument "to preserve it for appellate review" (CVDE 1:5). Furthermore, even if the High Seas Clause had a nexus requirement, that requirement would be satisfied in this case under the territorial principle of jurisdiction. *See Suerte*, 291 F.3d at 371 ("'To the extent . . . international law requires a nexus to the United States, that nexus requirement

16

. . . is satisfied by the foreign flag nation's authorization to apply U.S. law to the defendants [the territorial principle] and by the congressional finding that drug trafficking aboard vessels threatens the security of the United States [the protective principle]" (quoting *Cardales*, 168 F.3d at 553 n.2)) (brackets and ellipses in original).

**D.     Petitioners' Convictions Did Not Violate the Due Process Clause.**

Finally, Petitioners argue that their convictions violate the Due Process Clause of the Constitution because they "had no notice that they would be putting themselves in jeopardy in the United States" when they provided materially false information to the United States Coast Guard regarding the destination of the *Jossette* while in international waters (CVDE 1:22).   "[D]ue process requires only that an exercise of extraterritorial jurisdiction not be arbitrary or fundamentally unfair." *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016).   Although this is "a question of domestic law," "[c]ompliance with international law satisfies due process because it puts a defendant on notice that he could be subjected to the jurisdiction of the United States." *Id.* (internal quotation omitted).

Moreover, "[w]hen [a] foreign flag nation consents to the application of United States law, jurisdiction attaches under the statutory requirements of the MDLEA *without violation of due process* or the principles of international law because the flag nation's consent eliminates any concern that the application of United States law may be arbitrary or fundamentally unfair." *Cardales*, 168 F.3d at 554 (emphasis added).   *See also United States v. Perez Oviedo*, 281 F.3d 400, 403 (3rd Cir. 2002) ("Perez–Oviedo's state of facts presents an even stronger case for concluding that no due process violation occurred.   The Panamanian government expressly consented to the application of the MDLEA . . ..   Such consent from the flag nation eliminates a concern that the application of the MDLEA may be arbitrary or fundamentally unfair."); *Ibarguen-*

17

*Mosquera*, 634 F.3d at 1378-79 ("In determining whether an extraterritorial law comports with due process, appellate courts often consult international law principles such as the objective principle, the protective principle, or the territorial principle.")(emphasis added).

Furthermore, the text of the statute itself provides notice that the United States intends to enforce that law on vessels within its jurisdiction, including "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States." 18 U.S.C. § 70502(c)(1)(C).  *See Gonzalez*, 776 F.2d at 940 ("There is nothing vague about the statute.  Congress has provided clear notice of what conduct is forbidden: any possession of marijuana on the high seas with intent to distribute. The United States will enforce this law to the full extent of its ability under international law.").  It is also clear that the statute targets criminal conduct that facilitates drug trafficking, which is universally condemned by law-abiding nations.  As such, Petitioners' convictions due not violate the Due Process Clause.

### III.   CONCLUSION

Petitioners have failed to assert, let alone prove, either "sound reasons" for not bringing their claims earlier or significant collateral consequences from their convictions that would be alleviated by the granting of the petition.  Accordingly, they have failed to establish two of the necessary prerequisites for the granting of coram nobis relief.  Even if Petitioners had met those prerequisites, their claims are substantively without merit.

WHEREFORE, the petition should be DISMISSED as untimely or DENIED.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: */s/ Sean Paul Cronin*
Sean Paul Cronin
Assistant United States Attorney
Court No. A5500940
99 N.E. 4th Street, Suite 400
Miami, FL 33132
Tel# (305) 961-9194
Fax: (305) 530-6168
Email: sean.p.cronin@usdoj.gov

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Sean Paul Cronin*
Sean Paul Cronin
Assistant United States Attorney